The next case for oral argument this morning is Appeal No. 25-1605, United States v. Fung. Morning, Mr. Madden. Morning, Judge. May it please the Court, Matthew Madden, the appellant. Your Honors, Dr. Barnett Fung was found not guilty on 73 of 74 counts. That one count of conviction, which was count 7, is a conviction that this Court should not have confidence in, and the Court should not allow it to stand. The integrity of that count was called into serious question and undermined by several factors, most notably a flagrant disregard of the District Court's pretrial rulings by the government's expert witness, Dr. Timothy King. Now, this blatant violation of the Court's ruling was highly prejudicial to Dr. Fung, and incredibly, there's a fair inference to be made that the testimony was intentional. And that's where I'd like to start my argument. The District Court found that Dr. King did not intentionally make that statement. Under clearly erroneous review, how would you get around that? Well, Judge, here's why I think it was intentional, and here's why I think I can fairly infer that it was intentional. But this might be a great argument for the District Court. My question is, the District Court made that finding, and it would have to be clearly erroneous. So it sounds like you're making jury arguments or District Court arguments. Well, Judge, I do think it is clearly erroneous. Why can I say that it wasn't a mistake? Why can I infer that? Because the government essentially told us it was not a mistake at trial. At sidebar, the government immediately acknowledged the statement was objectionable. The AUSA explained to the Court that Dr. King was instructed to not talk about any patient's addiction during witness prep on, quote, Tuesday night and again this morning, unquote. So the very morning of the testimony, he was told not to do that. The government went on to say, and Judge, I'd like to read this verbatim. Your Honor, we did our best to prepare him to testify appropriately. I had not planned to ask him any questions about what she said in her interview because she does say a lot of things about her addiction issues in the interview. I was trying to avoid that at all costs. He was instructed not to talk about it. Notably, Dr. King is not some amateur witness off the street who panicked and blurted something out. He does this for a living. He travels across the country testifying for U.S. Attorney's Office in precisely this role. He's a professional witness, and this professional witness was specifically told that at least two occasions, including the morning of the testimony, he was told to not talk about addiction issues. And what did he do? He informed the jury that the patient named in 26 counts of the indictment was a self-admitted addicted to the very medications. So if this was so prejudicial, why did the jury acquit on every charge related to that patient? Well, Judge, it's a very fair question. You're exactly right. Patient Estrada, which the comment was made about, was not related to Count 7. Count 7 was about a— I understand. That's why I'm asking the question, and I think it's a fair question, too, and I'd like an answer. So in denying—and the district court also noted that in a strict sense she was not related. While it is true, I don't think it's quite that simple, Judge. Dr. King, you know, broadcast to the jury that Ms. Estrada was self-addicted to the medications that Dr. Fung had given her. Well, obviously, who had given her those prescriptions? That was Dr. Fung. That's a pretty damning statement to tell a jury. I understand. I've read your briefs. I've read those transcripts, and I'm asking you, given that the jury acquitted, how could we determine that this was so awfully prejudicial that mistrial was the only option? Put simply, Judge, an inflammatory statement like that attaches to the defendant, not just a certain— I understand your position. Is there a reason why this could not have been cured by simply saying, telling the jury that the witness did not say that Mr. Fung knew of her addiction problems and that the United States did not contend that he did know about her addiction problems? Judge, and the court, as Your Honor knows, did offer a curative instruction. We declined. That was not some long-term strategy for some appellate purpose in mind. We declined because it was our practical belief that re-raising it to the jury would exasperate the problem, not alleviate it. But pointing out specifically that there was no contention that Dr. Fung knew about that? Judge, Dr. King had just said that she was addicted to the medications. In order to give an instruction like Your Honor is saying, we would have to be re-raising that issue. We would have to be highlighting that issue, which we frankly didn't want to do. We had bad choices. Are you arguing that the district court sua sponte should have given that instruction, even though you declined it, and that it was error not to sua sponte give it? Judge, I think we didn't ask for it, so I'm not saying that—and the judge, the court could have done it sua sponte. Your blue brief seems to suggest that the court erred by not sua sponte giving a limiting instruction that you declined. No, that's not our position, Judge. Okay. So if that wasn't the implication there, that's not what we were saying. It might be helpful to step back for a moment and just answer the larger question of how this remark was so prejudicial as to cost Mr. Fung a fair trial. What's the best argument for that? Well, Judge, I think there's—Dr. Fung is the defendant obviously in every count. So what reflects poorly on him on count 20 also reflects poorly on him on count 7. I think there is spillover from that type of prejudicial statement. But he was acquitted on 73 counts. If this statement were so prejudicial and there was such a prejudicial spillover effect, why was he acquitted on all but one count? That goes directly counter to your spillover argument. Well, Judge, I don't think it does with respect because I think there are ripple effects from a statement like that. I cannot say why it wasn't more specific as to Miss Estrada, of course. No one can say that but the jury. But I do think— One of the things you have to articulate is the horror, and so that's what we're trying to elicit before we get to the cumulative error. What was the harm? Well, the harm was that it was an incredibly prejudicial thing to say. It reflects on his character. To tell the jury that this woman was addicted to the very medications that he was writing prescriptions, that reflects on his character, and that attaches to the defendant. It just doesn't attach to certain counts. So, again, Judge St. Eve, I can't say exactly why they found on seven they didn't find on whatever it was, 51 to 74. Maybe because there was video and audio evidence, and that's the only count there was video and audio evidence on? Well, that's actually—there was video and audio evidence at count one through six as well. Okay. So count one through six was one undercover agent. Count seven was a different undercover agent. And so there was—on seven counts there were video. If I could just get back to the curative instruction. As I was saying, we had bad choices thrust upon us, but we didn't bring these choices on. Dr. King put us in the position of these bad choices. So we were not the only ones to take the position that a curative instruction would do more harm than good. I mean, despite what they say in their response, the government accuses the defendant of, quote, strategically inviting error on appeal by declining that instruction. That's not what happened, and that's very selective memory, because what they told the district court at the time, after we took the position that we prefer that no instruction be given, the government told the court, quote, that's our position as well. Better not to draw any additional attention to the limited statement that was made, unquote. Mr. Madden, I'd like to move to what was your last argument here, please, in the interest of time. You argued that the district court erred by imposing the $50,000 fine as part of the sentencing. If you look at the PSR here, although the probation officer recommended no fine, the PSR clearly said he had a positive net worth and there was a basis to impose a fine. So what are we to do with that? Well, Judge, and just to be clear, because the government's response seemed to kind of indicate that we were taking a position that he couldn't afford a fine. That's not our position. I didn't understand that. My question is directed to the PSR, which the district court adopted the findings of the PSR, and the ultimate recommendation was no fine. But the PSR did note he had a positive net worth and a positive monthly flow, and it appears he has the means to make an immediate lump sum payment toward a potential fine. How do we factor that into your argument? Well, Judge, I think that the district court has under 5E1.2D and also under 18 U.S.C. 3572, there are factors that the court needs to consider. So the court did adopt factually the PSR, and we agree with that. The PSR then said we recommend no fine, which was also the defendant's point of view. The judge did not address any of those factors in imposing a fine that was at the top of the guideline, and I think the government cites U.S. v. Lee, but this case is not likely. Why wouldn't it be sufficient that the court adopted the findings, including it appears that he has the means to make an immediate lump sum payment toward a potential fine? Judge, I think that, well, he adopted the findings, but then went contrary to the recommendation. Yes, that's the question. What is the status of a recommendation in the Northern District of Illinois? Is it routine that they're publicly disclosed to the defense? It's up to the district court, but it almost always is disclosed to the defense. It's become routine.  I mean, in another district that I'm more familiar with, this would be like saying, Judge, you disagreed with your law clerk, which would have no weight at all. And that might very well be what Judge Alonso would say, but I think he does need to address the factors of 5E1.2D, which he didn't do. When he ticks through the factors, the seriousness of the offense, he walks through the personal history, the lack of criminal history. He talks through the just punishment to afford adequate deterrence. He talks about the opioid crisis and this being done during the middle of the opioid crisis, the collateral consequences that he recognizes, both on Dr. Fung, as well as the community, and equitable considerations. And so when we look at the factors 3553A, as well as those factors under the guidelines 5E1.2, what more would the district court, for us to be able to assess whether or not he supported that? I'm asking, what more would the judge have needed to do? Well, Judge, I absolutely agree that he did go through the 3553A factors sufficiently. What the judge didn't do was go through the 5E1.2D, because none of those factors were addressed in relation specifically to the fine. So are you saying that he had to say, I am now turning to 5E1.2, because there's significant overlap between the 3553A factors, as well as the 5E1.2 factors? The defendant's income, earning capacity, financial resources, those sorts of things of the 5E1.2 would have been covered when he adopted the factual findings in the PSR. And so there's significant case law that says he doesn't have to explicitly articulate line for line, but once he adopted those, weren't a significant amount of those already covered? Judge, the 3553A certainly were covered as far as the actual imposition of sentence. I'm moving to the 5E1.2. Judge, they were in relation specifically to the fine. They were not mentioned. They were not addressed. I certainly recognize there is some overlap, but I do think the district court, particularly if they're doing something that is contrary to the recommendation, contrary to one party's suggestion, they should be addressed. Would you agree that the recommendation was a legal error, because given the evidence and the findings in the PSR that the defendant had the ability to pay a fine? A legal error in the sense that a fine is to be imposed. The fine was mandatory if he had the ability to pay a fine. Judge, yes, I would. That said, I do think particularly a fine like it was, a $50,000 fine, should be addressed to some of the factors. Within the range. Yes. It was within the range. Okay. Thanks. And, Judge, if I could save the rest of my time. Of course. Of course. Thank you, Mr. Madden. Ms. Sullivan. May it please the court. Irene Sullivan on behalf of the United States. The district court acted well within its discretion in denying the defendant's motion for a mistrial. The statement about which defendant complains was brief and isolated and inadvertent, as the district court correctly found. It was only one line after hours of dense expert testimony at the end of a long and unrelated answer in response to an unrelated question. The government also immediately cut the witness off, and at no point did the government ever argue anything to the jury about patient addiction, let alone defendants any knowledge that the defendant had about patient addiction. Defendant suggests that Dr. King intentionally violated the court order, but as this court has noted, the district court found to the contrary. The district court found that Dr. King's statement was inadvertent, and defendant has offered nothing more than speculation to suggest that that finding was clearly erroneous. The district court was in the best position to evaluate the impact of this single sentence, considering the trial as a whole. Turning to the matter of the fine, the district court committed no error when it imposed defendants within guidelines fine. It adopted the factual findings of the PSR, including facts supporting defendant's ability to pay, facts that at no point did defendant ever contest. You've relied on Lee for your argument, but in Lee, it seems like the court specifically rejected the PSR's finding of no fine, and here the court didn't mention it. What impact should that have here? Your Honor, I think this is an easier case than Lee. In that case, the probation office found no ability to pay, and the district court then disagreed with that assessment. Here, the probation office did find an ability to pay, and the district judge agreed with that assessment. The district judge then just did a different evaluation of how the fine should play out under the 3553A factors. I think Lee is right on point in supporting government's position here. The court also emphasized the seriousness of defendant's offense, noting that defendant prescribed a dangerous and highly addictive substance to an undercover officer who told him she was not in pain, and that defendant's conduct represented an abdication of his oath and duty as a medical provider. He also, consistent with the guideline, discussed the collateral consequences of conviction, such as defendant losing his license and the impact that that would have on his identity. Certainly no further explanation was required here. And if the court has no further questions, the government asks that this court affirm defendant's conviction and sentence. Okay. Thank you, Ms. Sullivan. Mr. Madden, a little bit of time left. Your Honors, I'd like to, unless there's anything else on what we've already discussed, I did want to hit on one more topic, which was the Walgreens pharmacist. The government called a Walgreens pharmacist to provide lay testimony purportedly under Rule 701. What actually happened was that he gave pseudo-expert testimony based on his very specialized knowledge as a pharmacist. There was a pretrial defense motion seeking to exclude the testimony. The district court ruled that he would not be able to detail his own conclusions, his own opinions, but that's precisely what happened. On direct examination, he testified that he stopped filling Dr. Fung's prescriptions because Dr. Fung was writing prescriptions month after month but lacked, quote, a clear treatment plan for the future. Your Honors, that statement about no clear treatment plan is not testimony based simply on what he saw or what he did. But he didn't testify to that as an expert or that that's what happened. The question before that was, what did you tell him about the reasons for why you stopped filling? And the response was what you just read, and there was a limiting instruction given about what this testimony could be used for. Well, Judge, I agree, and I think that, but it clearly went into 702 because that's what he thought. That's what he testified he told him. He didn't say, I thought that. He said in direct response to what did you tell him? Judge, I don't know how that can be separated because he said, but that's exactly what we're trying to keep out because it can't be separated. Once he says that, he's going into 702 about what he thinks about the clear treatment plan. And, Your Honors, I'm out of time if there's any other questions. Thank you, Mr. Madden. Thank you. Thanks to both counsel. The court will take the case under advisement.